**James PEARSON, Appellant**
**(Defendant below),**

v.

**STATE of Indiana, Appellee**
**(Plaintiff below).**

No. 45S00–8702–CR266.

Supreme Court of Indiana.

June 1, 1988.

David T. Rolland, Tiller & Associates, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On May 9, 1984, James Pearson was found guilty by a jury in the Superior Court of Lake County of Attempted Murder, a class A felony. He was committed to the Department of Corrections for a period of twenty (20) years. He appeals directly to this court raising two issues for our review but because of our disposition of the first issue, concerning sufficiency of the evidence, consideration of the second issue is unnecessary.

The facts show that on September 23, 1983, at about 7:30 p.m., John Thomas, the victim, went to visit his friend. Appellant Pearson arrived later. After approximately 15 minutes, the two left together. The two men stopped to talk at a small gate outside. After a minute, Pearson noticed a police car parked across the street and turned to leave. Thomas stopped to close the gate. When Thomas turned around to follow Pearson, Pearson, who was about eight feet away, shot him once in the abdomen. There had been no argument or struggle between the two.

Pearson testified that as he turned to leave, his gun fell from his pocket. When he grabbed for it, it went off. Pearson testified the shooting was unintentional and accidental. Thomas testified he never saw the gun in Pearson's hand and he did not see Pearson point it at him. Both Pearson and Thomas testified they had been friends before the incident and had not argued prior to the shooting.

Gary Police Officer Brian Hamilton was parked in his patrol car directly across the street from the incident finishing his report on an unrelated matter when he saw Pearson shoot Thomas. He testified he observed Thomas and Pearson engaged in a conversation and then saw a flash of the gun as it was being discharged. He further testified that there was no struggle before the shooting, only conversation. He said that on hearing the shot, he looked and

saw Pearson holding the weapon. Pearson stood there a few seconds, still holding the gun which was aimed straight out pointing toward Thomas. Officer Hamilton got out of his car and identified himself. Apparently Pearson did not hear him, so Officer Hamilton fired several shots in the air. Pearson then moved back a few steps but made no attempt to flee. Victim Thomas walked over to the squad car. When Officer Hamilton got to Pearson, he did not have the gun on him. Officer Hamilton found the gun about three feet away from Pearson.

■ Pearson maintains the evidence was not sufficient to support his conviction for attempted murder. He contends the evidence failed to establish that he specifically intended to kill Thomas. When this court is confronted with a challenge to the sufficiency of the evidence, we neither weigh the evidence nor judge the credibility of witnesses. Rather, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact the verdict will not be overturned. *Whitt v. State* (1986), Ind., 499 N.E.2d 748, 749. In a prosecution for attempted murder, there must be a showing of the same specific intent to kill as is required for the crime of murder. *Tata v. State* (1986), Ind., 486 N.E.2d 1025, 1027; *Armstrong v. State* (1982), Ind., 429 N.E.2d 647, 653. The element of intent can be proven by the surrounding circumstances. *White v. State* (1986), Ind., 495 N.E.2d 725, 727, citing *Warfield v. State* (1981), 275 Ind. 396, 401, 417 N.E.2d 304, 307. The trier of fact may infer intent to kill from the use of a deadly weapon in a manner likely to cause death or great bodily harm. *Armstrong*, 429 N.E.2d at 653; *Whitt*, 499 N.E.2d 750.

■ Here the evidence presented by the State failed to support even an inference that Pearson intended to kill Thomas. The State's case was premised on Officer Hamilton's testimony that after the shot, he saw Pearson with the gun "pointing downwards, but straight out" at the victim.

Hamilton did not see Pearson holding the gun before the shot was fired. Hamilton saw only the flash of a gun being discharged from where he sat inside his squad car across the street. There was no testimony as to where the victim was at this time. The State also presented evidence that it was unlikely the gun could have gone off accidentally as it was considered to have a heavy trigger pull, one of 11½ pounds. The ballistics expert testified that the weapon, a Smith & Wesson .32 caliber revolver, was a double action revolver which could only be fired by pulling the trigger. However, on cross-examination, he testified that it was not impossible that the gun could go off accidentally and that the gun had not been cleaned between September 9, 1983 and April 25, 1984 and thus it was possible that it could have been a lighter trigger pull at the time of the shooting incident. Pearson testified that the trigger pull felt stiffer than it had several months previously.

The deputy prosecutor intimated that Pearson had a romantic interest in Thomas' girlfriend. However, this innuendo was denied by Pearson and no evidence was presented to support the prosecutor's allegation. The prosecutor also referred to the fact that Pearson did not offer medical assistance after the shooting. However, the facts reveal that there was no time for Pearson to act as Officer Hamilton immediately fired several shots into the air and ordered Pearson to drop his gun and lay on the ground.

Noticeably lacking is any presentation by the State of evidence of the path of the bullet in the victim. This might have been helpful in view of the officer's statement that it appeared to him the gun was pointed at the victim and Pearson's statement that the gun fell from his pocket and he grabbed for it causing it to fire. Also lacking is evidence concerning whether Pearson always carried the gun or whether he had the gun for the first time that night. Pearson stated he had not carried the gun earlier in the day at work and driving in a car. He stated he was carrying the gun that evening because he was on foot and

needed it for protection. However, the evidence was rather vague concerning how frequently Pearson carried the gun. If this was the first time Pearson had carried the gun, this evidence might have been probative of an intent to kill.

Further, the evidence presented shows that Pearson's conduct at the scene was not consistent with that of a man who intended to kill. He was shocked and stunned and did not move at first. If he had intended to shoot Thomas, he would have shot him and fled. Also of some significance is Pearson's knowledge of a police car parked directly across the street.

The testimony from Pearson and the victim, the only ones present, failed to manifest any conduct from which a jury could reasonably infer that Pearson intended to kill Thomas. Thus, the jury's verdict was not sustained by sufficient evidence in that there was no evidence that he had the requisite intent to kill Thomas necessary to sustain a conviction for attempted murder.

The trial court is reversed and because the State failed to maintain its burden, Pearson is ordered discharged.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.