David E. SMEDLEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 37S00–8908–CR–618.

Supreme Court of Indiana.

Nov. 2, 1990.

Kathryn B. O'Neall, Remington, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder and Conspiracy to Commit Murder. He received aggravated sentences of sixty (60) years and fifty (50) years, respectively, to run consecutively for a total sentence of one hundred ten (110) years.

The facts are: In April of 1986, Dwayne Hollifield, Timothy Johnson, and appellant drove around Lake County, consuming whiskey, beer, marijuana, and LSD. After about three hours, they saw appellant's brother, Brian Smedley, standing in front of a tavern in Gary with Lourdes Espinosa, appellant's next-door neighbor and the victim in this case. After socializing in front of the tavern with appellant and his companions for an hour or so, Brian and Espinosa agreed to ride around and drink beer with the other three. A short time later, Brian was driven to his home and got out, but appellant prevailed upon the victim to stay in the car.

As they continued to drive around in Hollifield's car, appellant persistently demanded that Espinosa perform fellatio upon him, but she refused. Even when appellant struck her in the face with his fists, she continued to refuse. Appellant then turned her facing away from him, pulled down her pants and over her protests penetrated her from the rear. The victim continued to resist, and when she defecated, appellant beat her into unconsciousness.

At this point, the three men decided they had to "get rid of" the victim, so they exited Interstate 65 at State Road 10, then pulled onto a gravel road, and finally stopped when they came to a drainage ditch. Johnson and appellant pulled the victim from the car and dragged her over to the ditch, where they threw her in and held her under the water with their feet. When appellant and Johnson returned to the car, they told Hollifield they had put the victim down under the water, and appellant told him, "If you tell anybody, I'll take care of you too."

On May 1, 1986, the owner of the farm where the drainage ditch was located discovered the victim's partially clad and submerged body and called the police. An autopsy conducted the following day revealed the victim had suffered multiple severe blunt force injuries, both internal and external, over her head, chest, and pelvic areas. Asphyxiation due to aspiration of blood into the airway from a hemorrhaging sinus was determined to have been the cause of death.

Appellant contends the trial court erred in denying his motion for individualized *voir dire* of prospective jurors. He argues that because the State had filed a request for the death penalty, there was a strong potential the jurors were influenced by each other's answers to questions regarding the death penalty and that this peer pressure caused them to hide their true feelings. He acknowledges we have decided this issue adversely to his position,

citing *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied,* 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809, but he notes we also suggested that due to "highly unusual or potentially damaging" circumstances, individualized *voir dire* may be required. *Id.* at 180.

However, as in *Rondon v. State* (1989), Ind., 534 N.E.2d 719, 724, *cert. denied,* — U.S. ——, 110 S.Ct. 418, 107 L.Ed.2d 383, "[b]ecause nothing highly unusual or potentially damaging to the defendant was brought to the trial court's attention that would have required individualized examination of the prospective jurors, we find no error." Moreover, appellant's contention here suffers from two fatal deficiencies as did the identical argument in *Partlow v. State* (1983), Ind., 453 N.E.2d 259, *cert. denied,* 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219:

> "We note that the defendant was not given the death penalty and therefore this issue has been resolved without prejudice to him and the issue is moot. [Citation omitted.] Furthermore, the defendant has not furnished us with a transcript of the *voir dire* proceedings nor pointed out in any way what transpired there that would occasion the prejudice he claims was apparent. Thus, there is no showing that the trial court abused its discretion in the denial of this motion and no showing that the defendant was in any way prejudiced by the trial court's ruling." *Id.* at 270.

Thus, because appellant did not receive the death penalty in the case at bar, did not include in this record a transcript of the *voir dire* questioning, and failed to show to the trial court any highly unusual or potentially damaging circumstances requiring individualized *voir dire,* we can find no error in the trial court's denial of his motion.

■ Appellant contends the trial court erred in denying his motion to dismiss those members of the venire then present in the courthouse due to their having passed through a corridor in which were posted from seven to nine uniformed sheriff's deputies. He maintains the atmosphere created by the sight of this many

uniforms upon the arrival of the members of the venire had to have prejudiced their minds that appellant was prone to violence, and that he thereby was placed in a position of grave peril to which he should not have been subjected.

Here, however, as in *Hester v. State* (1974), 262 Ind. 284, 315 N.E.2d 351, appellant made no attempt to establish that the jurors in fact had been prejudiced by the sight of the officers, nor did he request any admonishment from the trial court for the jurors to disregard the police presence in reaching their verdict. By failing to include a transcript of *voir dire* showing that any veniremen prejudiced in the manner alleged were in fact seated on the jury, appellant has foreclosed any finding of prejudice by this Court such as to demonstrate reversible error. *See Sharp v. State* (1989), Ind., 534 N.E.2d 708, *cert. denied,* — U.S. ——, 110 S.Ct. 1481, 108 L.Ed.2d 617.

The trial court did not err in refusing to dismiss the venire.

■ Appellant contends the trial court erred prior to impaneling the venire in excusing persons on the jury list from jury duty for the reasons that they were on vacation or were high school or college students. Prior to *voir dire,* defense counsel inquired of the court the reasons for excusal of the persons on the jury list who were not present. Upon learning that a number had been excused for the aforementioned reasons, counsel objected and moved the court to draw the jury "from a panel that has not been so selectively chosen." The court denied the motion.

Appellant argues the absence from the venire of high school and college students denied him a jury drawn from a fair cross section of the community in violation of *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. Noting that student status is not listed under Ind.Code § 35-37-1-5 as a reason for dismissal of a potential juror, appellant also argues this Court held in *Jones v. State* (1989), Ind., 540 N.E.2d 1228, that it was error for the trial court to excuse a prospective juror

who was a student because he needed to prepare for an examination.

However, *Batson, supra,* condemned the purposeful use of peremptory challenges by the State to exclude from the jury members of the defendant's own cognizable racial classification; it thus is inapposite to the case at bar. Contrary to appellant's assertion, in *Jones, supra,* we held it was *not* error for the trial court to excuse the student from the venire where no prejudice was shown to result. Moreover, while Ind.Code § 35–37–1–5 indeed does not list student status as a cause for striking a potential juror, we observe that this section lists reasons for which a venireman challenged by a party must be excused for cause by the court. A trial court otherwise has discretion to excuse prospective jurors on its own motion, so long as it is not done in an illogical or arbitrary manner. *Holt v. State* (1977), 266 Ind. 586, 365 N.E.2d 1209. Doing so prior to *voir dire* does not entitle the defendant to a mistrial. *Hailey v. State* (1988), Ind., 521 N.E.2d 1318; *see also* Ind.Code § 33–4–5.5–15. Absent the bad-faith purposeful exclusion of veniremen, no reversible error is committed where no injury to the defendant results from the trial court's action. *Russelburg v. State* (1988), Ind., 529 N.E.2d 1193.

Here, where appellant demonstrates no prejudice from the court's excusal of vacationers and students from the venire, but merely asserts it denied him a jury drawn from a fair cross section of the community, we find no reversible error.

Appellant contends the trial court erred in denying his motion to strike the venire as then constituted due to conversation concerning the instant crime in the jury room among veniremen awaiting *voir dire.* On the second day of *voir dire,* appellant's counsel moved to strike "the entire panel as presently constituted" for the reason that a prospective juror, Arlene Kilgis, had indicated that she had heard talk in the jury room to the effect that appellant had "killed a lady." The motion was denied.

Appellant argues that when this "possibility of bias and prejudice" was brought to the attention of the trial court, the court should have dismissed the panel or at least allowed him to present further evidence. He cites *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819 for the proposition that the court should have examined the jury to determine whether any prospective jurors had been influenced by discussion of the case, and that the court's failure to do so was reversible error because of the substantial risk that he was prejudiced by the discussions.

We disagree. Noting once again that the actual *voir dire* questioning is absent from the transcript, we see little danger of prejudice from such a general characterization of the case as alleged in counsel's verbatim objection. Moreover, we observe that appellant never requested the trial court to question the jurors whether they had been prejudiced by any such remarks. As in *Gregory v. State* (1989), Ind., 540 N.E.2d 585, where a juror remarked during a weekend recess that she was serving on a case in which a boy had killed his mother, we find the comments alleged here to be merely descriptive of the broad nature of the case and not so prejudicial as to merit reversal.

The trial court did not err in denying the motion to strike the panel.

Appellant contends the trial court erred in allowing the State, over his objection, to present evidence during the trial's guilt phase regarding the sexual assault and the injuries inflicted on the victim below the waist. At the guilt phase of the trial, appellant was charged only with murder and conspiracy; in the penalty phase, he was charged with intentionally killing the victim while committing or attempting to commit criminal deviate conduct as a basis for imposing a sentence of death under Ind.Code § 35–50–2–9(b)(1)(D). While the jury returned a verdict in the penalty phase finding appellant guilty of an intentional killing in the course of committing deviate conduct, they nevertheless recommended the death penalty not be imposed.

Appellant argues the admission of evidence of the deviate conduct prejudiced him in the guilt phase, claiming it bore no relation to the cause of death and maintaining the prosecutor should have been required to confine his proof to the offense charged. He cites *McCormick v. State* (1979), 272 Ind. 272, 397 N.E.2d 276 for the proposition that it is error to admit during the penalty phase evidence of crimes not charged in the guilt phase, and *Kelly v. State* (1989), Ind., 535 N.E.2d 140 for the proposition that it is error to allow the jury to convict the defendant of an offense not charged.

In *McCormick*, however, this Court held it was error to introduce in the penalty phase proof of a totally unrelated murder, which had not been reduced to a conviction, because it could not properly have been admitted during the guilt phase. As to *Kelly*, no judgment was entered in the case at bar upon the jury's finding of guilty of felony murder, which in any event would have merged into the murder conviction. *McCormick* and *Kelly* thus are not on point.

■ It is well settled that evidence of uncharged crimes committed as part of the same transaction as the offense charged is admissible. *Halbig v. State* (1988), Ind., 525 N.E.2d 288; *Wilson v. State* (1986), Ind., 491 N.E.2d 537; *Cary v. State* (1984), Ind., 469 N.E.2d 459. Here, the sexual assault on the victim led up to her beating death and unquestionably was part of the *res gestae* of the charged offenses. We find no merit to the claim that evidence of criminal deviate conduct should not have been admitted during the guilt phase of appellant's trial.

■ Appellant contends the trial court erred during the penalty phase by instructing the jury that if they found beyond a reasonable doubt that appellant committed murder while committing or attempting to commit criminal deviate conduct, they then were to consider whether to recommend imposition of the death penalty. Maintaining the felony murder count should have been charged in the guilt phase, appellant essentially argues that instructing the jury as to his "guilt" of the death penalty ag-

gravator impermissibly "mixed" the guilt and penalty phases of his trial to his undue prejudice.

As the statute clearly states, however: "In the sentencing hearing after a person is convicted of murder, the state must prove beyond a reasonable doubt the existence of at least one (1) of the aggravating circumstances alleged." Ind.Code § 35–50–2–9(a). Proof of the aggravating felony thus was required in the sentencing phase; although charging the aggravating circumstance as felony murder rather than the felony alone was unnecessary, this manner of structuring the charge served only to broaden the State's burden of proof, at no detriment to appellant.

■ At any rate, because the jury recommended against the death penalty and the trial court agreed, leaving appellant to serve a term of years, he suffered no prejudice from any error in the penalty phase instructions. *Partlow, supra.* Appellant demonstrates no reversible error here.

■ Appellant contends the trial court erred during the guilt phase by refusing to give his tendered jury instructions on voluntary manslaughter. Citing *Finch v. State* (1987), Ind., 510 N.E.2d 673 for the proposition that any appreciable evidence of sudden heat justifies an instruction on voluntary manslaughter, appellant maintains the evidence of the victim's defecation upon him provides sufficient provocation to sudden heat to support giving such an instruction, particularly in light of his intoxication which, he argues, lowered his threshold of susceptibility to sudden heat.

■ For the refusal of an instruction on a lesser offense to be error, the evidence must be subject to the interpretation not only that the lesser offense was committed, but that the greater offense was not. *Huffman v. State* (1989), Ind., 543 N.E.2d 360. For sudden heat to reduce murder to manslaughter, there must be sufficient provocation to arouse the emotions of an ordinary person so as to obscure his reasoning powers. *Madison v. State* (1989), Ind., 534 N.E.2d 702. While appellant's intoxication increased his tend-

ency to become enraged, it does not alter the standard of provocation sufficient to obscure an ordinary person's reasoning. Appellant's intoxication thus has no bearing on the presence or absence of sudden heat. We note the trial court gave proper instructions in the instant case concerning the standard of intoxication required to relieve criminal responsibility by negating the *mens rea* element of the crime.

The evidence of appellant's actions before and after the beating—that he attempted to force the victim, his neighbor, to perform sex acts, and that he and his companions took steps to ensure the victim was dead and then disposed of her body in a drainage ditch—is not subject to an interpretation that the greater offenses of conspiracy and murder were not committed. Instructions on the lesser offense of voluntary manslaughter thus were not required. *See Underwood v. State* (1989), Ind., 535 N.E.2d 507, *cert. denied,* —— U.S. ——, 110 S.Ct. 257, 107 L.Ed.2d 206.

The refusal of appellant's tendered instructions on voluntary manslaughter was not error.

■ Appellant contends the evidence is insufficient to support his convictions of murder and conspiracy to commit murder. He points to discrepancies between his co-perpetrators Johnson's and Hollifield's versions of the events of the night of the crime, including conflicts in the type of car they were driving, the time events began, whether the victim's sex acts with appellant might have been consensual, their state of nudity, and the timing of the blows struck by appellant. He emphasizes the testimony of Hollifield that the sex appeared to be consensual, that the victim was not struck until after she defecated, and that she exited his car under her own power.

Appellant also argues that the evidence of his intoxication went unrebutted and should preclude his conviction for murder; that because the victim may have been dead when removed from the car, the actions taken to dispose of her body do not show any conspiracy to murder her; and that because an expert witness testified the victim's below-the-waist injuries appeared to have been inflicted with greater force than could be exerted by an erect penis, the jury's finding of felony murder in the course of committing criminal deviate conduct was unsupported.

■ On sufficiency review, however, we examine only that evidence most favorable to the verdict, together with all reasonable inferences to be drawn therefrom, to determine whether there is substantial evidence of probative value to support the verdict. *Pearson v. State* (1988), Ind., 523 N.E.2d 747. We will not reweigh the evidence nor judge the credibility of the witnesses. *Tiller v. State* (1989), Ind., 541 N.E.2d 885; *Pearson, supra.* The conflicts in testimony as here set out by appellant were matters to be resolved by the jury; as such discrepancies go to the weight of the evidence, we will not invade the province of the jury in this regard. *Walters v. State* (1986), Ind., 495 N.E.2d 734.

■ In the case at bar, the jury was entitled to believe the testimony of co-perpetrator Johnson, as essentially summarized at the outset of this opinion, which provided sufficient evidence to support the verdicts returned in this case. Moreover, the evidence of appellant's intoxication was before the jury which had been instructed properly on that subject. We observe that the evidence of appellant's conduct, including his disposal of the victim and his threats to Hollifield to stay quiet about it, was sufficient to support a finding that he was not so intoxicated as to be unable to form the intent to commit the crimes charged. *See Montgomery v. State* (1988), Ind., 521 N.E.2d 1306, *cert. denied,* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83. The record also reveals that all three participants had ingested similar amounts of intoxicants on the evening in question; this fact might have aided the jury in reconciling conflicts between the testimony of Hollifield and Johnson.

■ The decision to drive to a remote area, and the actions of appellant and Johnson in holding the victim's body underwa-

ter with their feet, evidence an overt act in furtherance of an agreement to conceal the crime by silencing the victim forever. The victim, of course, could have been both sexually assaulted and then otherwise traumatized below the waist, and in any event appellant's contention on this point is superfluous as no judgment was rendered upon the felony murder/deviate conduct verdict.

The evidence is sufficient to support appellant's convictions.

■ Appellant contends his executed sentence of 110 years is manifestly unreasonable because the trial court erred in using the same aggravating circumstances both to enhance his murder and conspiracy sentences from the presumptive terms of 40 and 30 years to the maximum terms of 60 and 50 years, respectively, and to order such sentences to be served consecutively.

■ This argument, however, has been decided adversely to appellant. Alternative ways of increasing a particular sentence due to aggravating circumstances are not mutually exclusive; a court may, upon consideration of relevant facts and information, increase the presumptive penalties, impose consecutive sentences, or both. *Parrish v. State* (1987), Ind., 515 N.E.2d 516; *Abercrombie v. State* (1981), 275 Ind. 407, 417 N.E.2d 316, *on remand,* 441 N.E.2d 442. There is no statutory prohibition against using the same factors to enhance the sentences and to impose consecutive sentences. *Bish v. State* (1981), Ind., 421 N.E.2d 608.

The trial court did not err in imposing the maximum terms and ordering them to be served consecutively based upon the same aggravating circumstances.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs and dissents with separate opinion.

DeBRULER, Justice, concurring and dissenting.

In general, no legal problem arises when a person is charged, tried and sentenced for a substantive offense and a conspiracy to commit the same substantive offense. *Chinn v. State* (1987), Ind., 511 N.E.2d 1000. Planning to commit a crime and carrying out that plan are separate acts. Conspiracy has been held not to be a lesser and included offense of the substantive offense. *Lane v. State* (1972), 259 Ind. 468, 288 N.E.2d 258. The offense of conspiracy, I.C. 35–41–5–2, requires an agreement to commit a felony and the performance of an overt act in furtherance of the agreement. The crime of conspiracy poses distinct dangers apart from and not necessarily confined to the planned substantive offense. *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893. Here, however, the agreement to kill was reached in the car after the victim was beaten, and a short while before she was taken from the car and killed in a ditch. The element of conspiracy, as charged, proved and relied upon by the State as the overt act in furtherance of the conspiracy to kill, was the act of abandoning the victim in the ditch.

An accurate discernment by this Court of the intent of the legislature in enacting a statute creating a separate crime of conspiracy is crucial to maintaining the proper application of that statute. *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). It is evident to me that it is not within the intent of the Indiana legislature to separately punish a conspiracy, which occurs during and as part of the actual commission and completion of the substantive offense in the type of compressed time period shown by this evidence, and the substantive offense as well. There is in such instances a total overlap in the proof of both, which is often considered important in determining whether a conspiracy is sufficiently distinguishable from the substantive offense to be separately punished. I would address this issue, although it is not specifically argued, as within the umbrella of appellant's claim that the evidence presented by the State is insufficient to prove the offense of conspir-

acy. The separate conviction and sentence for conspiracy should be reversed. I agree, however, that the conviction and sentence for murder should be affirmed.