Theothus CARTER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 30A05–1012–CR–804.

Court of Appeals of Indiana.

Oct. 25, 2011.

Holly L. Lyons, Greenfield, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for appellee.

**OPINION**

MAY, Judge.

Theothus Carter was convicted after a jury trial of three Class A felonies—attempted murder,[1] attempted robbery,[2] and burglary[3]—and later was found by the court to be an habitual offender.[4] Carter argues on appeal the prosecutor improperly referred to his decision not to testify; the jury was not properly instructed; the trial court should not have allowed the State to amend the charging information; and he was subjected to double jeopardy when the State used the same injury to the victim to enhance two different counts.

We affirm in part, reverse in part, and remand.

1. Ind.Code § 35–41–5–1 (attempt); Ind.Code § 35–42–1–1 (murder).

2. Ind.Code § 35–42–5–1 (robbery).

3. Ind.Code § 35–43–2–1.

4. Ind.Code § 35–50–2–8.

## FACTS AND PROCEDURAL HISTORY

In May of 2010, Carter and three other people broke into a home in Hancock County in order to take money they believed was there. Carter threatened to kill one resident and he shot the other. The State charged Carter with attempted murder and attempted robbery as Class A felonies and with burglary as a Class B felony. It subsequently amended the burglary charge to a Class A felony[5] and charged Carter with being an habitual offender. A jury found him guilty of all three counts and the court found he was an habitual offender.

## DISCUSSION AND DECISION

1. *Prosecutorial Misconduct*

■ Carter asserts that "sprinkled through [the State's closing argument] were several references to Carter's decision not to testify," (Br. of Appellant at 4–5), and other inappropriate comments. In reviewing a claim of prosecutorial misconduct, we determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Schmidt v. State*, 816 N.E.2d 925, 944 (Ind.Ct.App. 2004), *trans. denied.* The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. *Id.*

■ Carter's trial counsel did not object to the statements Carter now argues

5. Burglary is a Class B felony if committed while armed with a deadly weapon or in a dwelling. Ind.Code § 35–43–2–1. It is a Class A felony if it results in bodily injury. *Id.*

amounted to prosecutorial misconduct. A claim of prosecutorial misconduct presented on appeal without a contemporaneous trial objection will not succeed unless the defendant establishes not only prosecutorial misconduct but also the additional grounds for fundamental error. *Id.* For prosecutorial misconduct to be fundamental error, it must make a fair trial impossible or amount to clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm. *Id.*

▪ It is misconduct for a prosecutor to request the jury convict a defendant for any reason other than his guilt. *Id.* A defendant's privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that a jury may reasonably interpret as an invitation to draw an adverse inference from a defendant's silence. *Id.* The defendant bears the burden of proving that a remark by the prosecutor penalized his exercise of the right to remain silent. *Id.*

▪ Carter points to several statements by the prosecutor, all in closing argument, that we agree were inappropriate.[6] Specifically, Carter's prosecutor said:

And then we have [Carter]. His body language, even of itself, tells you this is just one more joke to him. Its [sic] no joke to [the victim] and it never will be. [Carter] was his own witness in this case. He never intended to be but he was a witness by what he said in the jail.

(Tr. at 662.) She referred to Carter's tattoos and commented on his lack of remorse: "It's not even sorry—what he's sorry for on the drive back to [the victim's] residence." (*Id.* at 649.) She appealed to the jurors' emotions, asking them to put themselves in the victim's shoes: "What will (inaudible)[7] live without? What do you think she thinks about every night when it gets dark outside? ... What will some of you think when you go home tonight?" (*Id.* at 666.) Finally, Carter's prosecutor made an inappropriate reference to Carter's silence when she argued the evidence before the jury was not in dispute: "What is evidence in this case is what you saw and heard from that witness box.... [T]he evidence is overwhelming and it is not in dispute. What is not in dispute? That Mr. Carter, there is no evidence from that stand. None." (*Id.* at 657.)[8]

**6.** Carter also challenges the prosecutor's statement: "silent witnesses confirmed what they were telling you from the witness box." (Tr. at 653.) We do not believe that statement was an improper reference to Carter's failure to testify. In context, it is apparent that reference was to a surveillance video. *See Pritchard v. State*, 810 N.E.2d 758, 761 (Ind.Ct.App. 2004) (under the "silent witness" theory, video recordings and photographic evidence may be admitted as substantive evidence, rather than merely as demonstrative evidence).

**7.** It is apparent from the context that this is a reference to the victim's wife, who was present at the time of the break-in.

**8.** We reject the State's assertion this direct reference to Carter's decision not to testify was "entirely proper." (Br. of Appellee at 9.) The State asserts the prosecutor's comments

"were presented to reflect upon [Carter's] credibility only, and no reasonable juror would consider them to be anything else." (*Id.*) The State does not explain how, in light of Carter's decision not to testify, comments on his "credibility" could be "entirely proper" or even relevant. *See, e.g., Rowley v. State*, 259 Ind. 209, 212, 285 N.E.2d 646, 647–48 (1972) (noting the "long standing prohibition against commenting on the silence of the accused," which is of "constitutional dimension ... the Fifth Amendment, in its bearing on the states through the Fourteenth Amendment, forbids comment by the prosecution on the accused's silence."). Nor does the State explain how the prosecutor's comments about the nature and extent of injury to the *victim* reflect on *Carter's* "credibility."

■■■ While we agree the prosecutor's statements were inappropriate and amounted to misconduct, we cannot find fundamental error. The mere fact that an alleged error implicates constitutional issues does not establish it was fundamental. *Schmidt*, 816 N.E.2d at 945. Our Indiana Supreme Court has emphasized the "extremely narrow" application of the fundamental error doctrine:

> To qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. To be fundamental error, the error must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process.

*Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002) (citations and quotations omitted); *see also Ford v. State*, 704 N.E.2d 457, 461 (Ind.1998) (stating court views fundamental error exception as extremely narrow, available only when record reveals clearly blatant violations of basic and elementary principles and harm or potential harm cannot be denied), *reh'g denied.*

The jury heard evidence Carter learned that there were two safes in the victims' home that contained a lot of money. He told his companions they could go to the home and steal the safes. They went to the home around 11:00 p.m., and a surveillance camera recorded Carter's arrival. Police recovered a gun from Carter's house and ballistics tests indicated the bullets found at the crime scene were fired from Carter's gun. When there is overwhelming independent evidence of a defendant's guilt, error by a prosecutor during closing argument may be harmless. *Hand v. State*, 863 N.E.2d 386, 394–95 (Ind.Ct. App.2007). As the State presented overwhelming independent evidence of Carter's guilt, we cannot find the prosecutor's im-

proper statements were fundamental error.

Having found misconduct, we acknowledge, and reject, the State's argument that as long as a jury is instructed that statements by attorneys are not evidence, "[t]he Court on review will not find prosecutorial misconduct." (Br. of Appellee at 9.) In support of this argument, the State cites *Collins v. State*, 643 N.E.2d 375, 381–82 (Ind.Ct.App.1994), *trans. denied.* There we noted in addressing a claim of prosecutorial misconduct: "Reversal is required where the evidence is close and the trial court fails to alleviate the prejudicial effect." *Id.* (quoting *Everroad v. State*, 571 N.E.2d 1240, 1244 (Ind.1991)). We held Collins did not prove the evidence was close and "he merely asserts prejudice without substantiation." *Id.* at 382. After deciding the prosecutorial misconduct issue on that ground, we said in *dictum* "[m]oreover, the jury was instructed that the comments and arguments of counsel were not evidence and that they were free to accept or reject the arguments as they saw fit." *Id.*

Such an instruction is commonly given in jury trials, and remarks by the State's counsel that are alleged to be prosecutorial misconduct presumably almost always arise out of argument, not out of "evidence" in the form of a prosecutor's direct testimony as a witness in a case. *See, e.g., Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006) ("Whether a prosecutor's *argument* constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct.") (emphasis supplied); *Keifer v. State*, 204 Ind. 454, 184 N.E. 557, 560 (1933) ("Where a prosecuting attorney, *in his argument*, comments ... upon the failure of the accused to testify, harmful error will be presumed.") (emphasis supplied); *Poling v. State*, 938 N.E.2d 1212, 1217 (Ind.Ct.App.2010) ("In judging the

propriety of a prosecutor's remarks, the court considers the statements in the context of *the argument as a whole*.") (emphasis supplied).

Adopting the State's position would, for all practical purposes, mean nothing in a prosecutor's argument, no matter how egregious, inappropriate, unfair, prejudicial, or otherwise objectionable, could ever amount to "misconduct" so long as the jury is instructed the prosecutor's statements are not evidence. We decline the State's invitation to so hold.

### 2. *Jury Instructions*

■ Carter asserts error in the fact that the trial court "instructed the jury . . . as to the charges by reading the charging information," (Br. of Appellant at 7), but "did not give an instruction containing the language of the Murder Statute, the Robbery Statute or the Burglary Statute." (*Id.*) He argues "[t]he jury cannot reasonably be expected to hold the State to its burden of proof if they [sic] don't know what the essential elements are of the crime charged." (*Id.* at 8.) We find no error in this regard, as the trial court explicitly and accurately instructed the jury on the elements of each of those offenses. (*See* Tr. at 702–03) (instructing jury as to elements of attempt and murder); *id.* at 703 (elements of attempt and robbery); *id.* at 704 (elements of burglary).

### 3. *Amendments to Charging Information*

■ Carter asserts error in the amendment to the charging information to include the habitual offender count.[9] Ind. Code § 35–34–1–5(e) provides:

An amendment of an indictment or information to include a habitual offender charge under IC 35–50–2–8, IC 35–50–2–8.5, or IC 35–50–2–10 must be made not later than ten (10) days after the omnibus date. However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of the trial.

Subsection (d) provides:

Before amendment of any indictment or information other than amendment as provided in subsection (b) of this section, the court shall give all parties adequate notice of the intended amendment and an opportunity to be heard. Upon permitting such amendment, the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare his defense.

The omnibus date was August 12, 2010, and State gave notice on September 16 that it would file an habitual offender enhancement. On November 12, it moved to amend the information to add the habitual offender allegation. That was too late, but the trial court could permit the late filing for "good cause." Ind.Code § 35–34–1–5(e).

In *Johnican v. State,* 804 N.E.2d 211, 215 (Ind.Ct.App.2004), we found good cause for late filing of an habitual offender enhancement based on the trial court's determination

plea negotiations continued up to or very shortly prior to the filing of the enhancement. Johnican either refused to accept the plea bargain offer or rejected the

---

9. Carter also asserts error in the amendment of the burglary charge from a Class B felony to a Class A felony. As explained below, the amendment to the burglary charge was error because it subjected Carter to double jeopardy. We therefore need not address whether an initial hearing was required for that amendment.

offer by inaction. Johnican may not now be heard to successfully argue that he was surprised by the late filing of the enhancement.

Carter's counsel suggested to the court on October 19 that plea negotiations would not be successful: "I honestly think the chasm between the state and the defense is simply too wide in this case." (Tr. at 37.) That statement was made over a month after Carter knew the State intended to file the enhancement, and thus Carter could not have been surprised when the enhancement was filed thereafter. Nor has he demonstrated he was prejudiced by the late amendment. We acknowledge Carter's claim "the habitual phase in this case was somewhat more than a paperwork review" of his prior convictions. But as indicated above, Carter knew well in advance of the amendment that plea negotiations would not be successful and the State would file the habitual offender enhancement. Nor did Carter object or request a continuance. We therefore cannot find error. *See Frink v. State,* 568 N.E.2d 535, 538 (Ind.1991) (noting a hearing on the State's proposed amendment was required by Ind.Code § 35–34–1–5(d), but Frink did not show he was prejudiced).

### 4. *Double Jeopardy*

■ Carter was subjected to double jeopardy when his burglary conviction was elevated to a Class A felony based on the same bodily injury that was used to elevate his robbery conviction to a Class A felony. *See Pierce v. State,* 761 N.E.2d 826, 830 (Ind.2002) (where a burglary conviction is elevated based on the same bodily injury that forms the basis of an elevat-

ed robbery conviction, the two cannot stand.).[10]

Carter's Class A felony attempted robbery charge alleged he "shot [the victim] at least twice, resulting in serious bodily injury to [the victim]." (App. at 2.) The amended information charging Carter with Class A felony burglary alleges Carter entered the victim's dwelling with intent to commit several felonies therein, "resulting in bodily injury to [the victim]." (*Id.* at 4.) In its motion to amend, the State asserted the amendment was permissible because the attempted robbery count "includes an allegation of serious bodily injury, therefore putting [Carter] on notice of that element." (*Id.* at 6.)

The State did not indicate a specific injury to support the amended burglary charge that was different from the "serious bodily injury" alleged in support of the Class A felony attempted robbery count. But the State now argues on appeal there was no double jeopardy because it could be reasonably inferred "the jury did not use the same bodily injury to support both crimes." (Br. of Appellee at 16.) We cannot agree.

■ Courts consider the statutes, charging instruments, evidence, and arguments of counsel in order to determine whether the facts establishing one crime are the same as the facts establishing one or more elements of another. *Newgent v. State,* 897 N.E.2d 520, 528 (Ind.Ct.App. 2008). It is apparent from the amendment to the burglary charging information that the State considered the bodily injury supporting the attempted robbery charge and the burglary charge to be the same. But the State now argues one gunshot-related wound was more serious than the others,

**10.** The State argues at some length that the facts herein do not meet the test for double jeopardy set forth in *Richardson v. State,* 717 N.E.2d 32, 53 (Ind.1999). But the *Pierce*

Court explicitly announced that its holding was based on a rule that is "not governed by the constitutional test set forth in *Richardson."* *Pierce,* 761 N.E.2d at 830.

so the jury could have "considered this gunshot wound separate and apart from the other two and considered it to be the serious bodily injury that resulted from the attempted robbery," (Br. of Appellee at 17), while considering the other gunshot wounds to be the bodily injury that resulted from the burglary.

The State directs us to nothing in the record to indicate the jury was presented with this distinction at trial or was urged to rely on different injuries to support the different counts. Therefore we must conclude Carter was subjected to double jeopardy. We vacate the Class A burglary conviction and direct the trial court on remand to reduce the burglary charge to a Class B felony and resentence Carter accordingly.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and RILEY, J., concur.