**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**EUGENE C. HOLLANDER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GARY R. ROM**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jul 31 2012, 9:26 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TOMMY JOE DOUBLIN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 90A05-1110-CR-521 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WELLS CIRCUIT COURT
The Honorable Kenton W. Kiracofe, Judge
Cause No. 90C01-1103-FB-3

**July 31, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Tommy Doublin (Doublin), appeals his conviction for burglary, a Class B felony, Ind. Code § 35-43-2-1 and his adjudication as a habitual offender, I.C. § 35-50-2-8.

We affirm.

## ISSUES

Doublin raises three issues on appeal, which we restate as:

(1)     Whether the testimony of the single witness was incredibly dubious;

(2)     Whether the State committed misconduct during its final argument; and

(3)     Whether the trial court properly instructed the jury.

## FACTS AND PROCEDURAL HISTROY

On February 16, 2011, Tim Kleinknight (Kleinknight) gave his ex-wife, Tricia Shutt-Lewis (Lewis), a key to his home so that Lewis could store ice cream in Kleinknight's freezer for their daughter's upcoming birthday party. Kleinknight and Lewis were married for four years and had been divorced for three years, but Lewis still came to Kleinknight's home about once a week to see and pick up their minor daughter who continued to live with Kleinknight after their divorce. Lewis was familiar with the layout of Kleinknight's home and was aware that he kept money under his waterbed mattress in his bedroom as well as in a safe. After receiving Kleinknight's key that day, Lewis went to a hardware store and had a duplicate key made.

On February 21, 2011, Lewis drove Doublin, her then boyfriend, to Kleinknight's home and Doublin used the duplicate key to enter the house. Lewis drove around the block while Doublin was inside the home. After about five minutes of being inside, Lewis returned and Doublin entered the vehicle with a handful of cash.

After returning home, Kleinknight did not notice any signs of forced entry, but noticed seven hundred fifty dollars missing from under his mattress and that the handle on his safe was broken. Kleinknight suspected his former wife was responsible for the burglary and contacted the Bluffton City Police Department and spoke to Sergeant James Mettler (Sergeant Mettler). Sergeant Mettler interviewed Lewis and Doublin regarding the burglary, and both denied any knowledge of it. Days later, Sergeant Mettler received a telephone call from Lewis telling him that she had lied to him during her interview. Lewis then told Sergeant Mettler that Doublin had talked her into making a duplicate key to Kleinknight's home and that they had mutually agreed the key would later be used to enter the house and steal his money.

Lewis was charged with burglary. In return for her signing a plea agreement that required her to testify against Doublin, Lewis was sentenced to house arrest.

On March 21, 2011, the State filed an Information charging Doublin with burglary, a Class B felony, I.C. § 35-43-2-1. On March 28, 2011, the State submitted a notice to seek habitual offender status, I.C. § 35-50-2-8. On September 6, 2011, a bifurcated jury trial was held. At the close of the evidence Doublin was found guilty. After Doublin was convicted of burglary, he pled guilty to the habitual offender

enhancement.  On September 20, 2011, a sentencing hearing was held and the trial court sentenced Doublin to fifteen years executed with an additional twenty year term under the habitual offender status.

Doublin now appeals.  Additional facts will be provided as necessary.

DISCUSSION AND DECSION

I. *Incredible Dubiosity Rule*

Doublin first contends that his burglary conviction was not supported by sufficient evidence.  Doublin argues that there was no evidentiary connection or independent proof linking him to the burglary other than Lewis' testimony.  He claims that such testimony of Lewis was inherently improbable and totally uncorroborated by any other item of evidence and should therefore not be considered credible.  When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh the evidence nor judge witness credibility.  *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).  "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence."  *Id*.  We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt.  *Id*.  Evidence is insufficient to convict when no rational fact finder could have found the defendant guilty beyond a reasonable doubt.  *Clark v. State*, 728 N.E.2d 880, 887 (Ind. Ct. App. 2000).

This court may impinge upon the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced,

4

equivocal, wholly uncorroborated testimony. *Lawson v. State*, 966 N.E.2d 1273, 1281 (Ind. Ct. App. 2012). If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007). This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, and wholly uncorroborated testimony of incredible dubiosity. *Id*. Incredibly dubious or inherently improbable testimony is that which runs counter to human experience and which no reasonable person could believe. *Campbell v. State*, 732 N.E.2d 197, 207 (Ind. Ct. App. 2000). This incredibly dubiosity rule applies only when a witness contradicts himself in a single statement or while testifying, and does not apply to conflicts between multiple statements. *Glenn v. State,* 884 N.E.2d 347, 356 (Ind. Ct. App. 2008), *trans. denied*.

Lewis' testimony was consistent and un-contradicted on both her direct and cross examination. Doublin gave no examples of Lewis' testimony being inherently contradictory and instead spent seven pages attempting to persuade this court to reweigh her testimony and credibility, which we cannot do. Although Lewis' testimony as the sole witness was unsupported, a reasonable fact-finder found Lewis' testimony credible and Doublin guilty beyond a reasonable doubt. Thus, we conclude that Lewis' testimony was not incredibly dubious, and the State did present sufficient evidence to support Doublin's conviction.

II. *Prosecutorial Misconduct*

5

Doublin also contends that the State's statements during closing argument amounted to prosecutorial misconduct. In reviewing whether prosecutorial misconduct occurred, we consider (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril. *Carter v. State*, 956 N.E.2d 167, 169 (Ind. Ct. App. 2011), *trans. denied.* The gravity of the peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety. *Id.* In judging the propriety of a prosecutor's remarks, we consider statements made in the context of the argument. *Weis v. State*, 825N.E.2d 896, 907 Ind. Ct. App. 2005).

A claim of prosecutorial misconduct presented on appeal without a contemporaneous trial objection, as here, will not succeed unless the defendant establishes not only prosecutorial misconduct but also fundamental error. *Carter*, 956 N.E.2d at 170. To rise to the level of fundamental error, the error "must constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *Etienne v. State*, 716 N.E.2d 457, 462 (Ind. 1999).

Although Doublin's specific argument is difficult to discern, it appears that he complains about the State's references to "innuendo and subterfuge" and the State's mention of "community standards" in its closing argument. (Appellant Br. pp. 23, 26). The State emphasized to the jury that Lewis' testimony was uncontroverted and recommended that they follow their common sense. We conclude that these actions did

6

not amount to prosecutorial misconduct nor did it place Doublin in a position of peril because it was not improper for the prosecutor to ask the jurors to use common sense in deciding their verdict. *See Staton v. State*, 853 N.E.2d 470, 475 (Ind. 2006) (referencing Charles A. Wright & Victor J. Gold, *Federal Practice & Procedures* § 6075 at 450 (1990) (obviously, no juror can or should approach deliberations with an entirely clean cognitive slate. Humans can make intelligent decisions only by drawing upon their accumulated background knowledge and experience. Jurors are not only permitted to make decisions in this manner, it is expected of them)). Therefore, we conclude that the State's statements during closing argument did not amount t prosecutorial misconduct.

### III. *Jury Instruction*

Finally, Doublin contends the trial court erred by not instructing the jury as to the reasonable theory of innocence. Specifically, he asserts that because the evidence against him solely consisted of circumstantial evidence, the jury should have been instructed on the difference between circumstantial and direct evidence. Instructing the jury is a matter assigned to the sound discretion of the trial court, and we review a trial court's decisions only for an abuse of discretion. *Smith v. State*, 668 N.E.2d 661, 662 (Ind. 1996). In reviewing a challenge to a jury instruction, "this court considers: (1) whether the instruction correctly stated the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction was covered by the instruction. *Hubbard v. State*, 742 N.E.2d 919, 921 (Ind. 2001).

7

Because Doublin failed to object at trial, he now contends that it was fundamental error when the jury was not given an instruction on the reasonable theory of innocence. Our supreme court concluded that this instruction should not be used unless the trial court determines that the *actus reus* of a crime may only be established by circumstantial evidence; and if so the jury should be instructed with a requirement that proof be so conclusive and sure as to exclude every reasonable theory of innocence. *Hampton v. State*, 961 N.E.2d 480, 491 (Ind. 2012). In formulating this position, the court reasoned that requiring the instruction in cases where there is any direct evidence of the fact that a criminal offense has occurred would result in the instruction rarely being used and requiring the instruction in cases where direct evidence is lacking for any single element would necessitate the instruction's use in almost all criminal cases because *mens rea* is often shown only by circumstantial evidence. *Id*. at 490-91. Thus, the court required the instruction's use when the trial court determines that the *actus reus* of a crime was established only by circumstantial evidence. *Id*. at 491.

Doublin argues that all the evidence of his guilt was entirely circumstantial and this court should require that proof of his guilt should be so conclusive and sure that it excluded every reasonable theory of innocence. Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption. *Id*. at 489. Circumstantial evidence is evidence based on inference and not on personal knowledge or observation. *Id*. Witness testimony to an alleged crime can be direct evidence. *See Chapman v. State*, 556 N.E.2d 927, 931(Ind. 1990) (testimony of

8

bank teller was considered direct evidence when the teller identified the unmasked man she saw outside bank and the masked man who robbed the bank as the same person). Lewis was a direct witness and testified to Doublin's crime. She testified that Doublin used her duplicate key to gain unauthorized access to Kleinknight's home and steal his money. Lewis drove Doublin to Kleinknight's, picked him up, and observed him with the money in his hand when leaving Kleinknight's home. Because direct evidence established evidence of Doublin's guilt, the trial court did not err, let alone make a fundamental error, by not offering a jury instruction on the reasonable theory of innocence.

## CONCLUSION

Based on the foregoing, we conclude that: (1) Lewis' testimony was not incredibly dubious and sufficient to convict Doublin; (2) statements by the State during its closing argument did not amount to fundamental error; and (3) the trial court did not commit fundamental error by not giving a jury instruction on the reasonable theory of innocence jury instruction.

Affirmed.

NAJAM, J. and DARDEN, S. J. concur