**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 14 2014, 6:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

TRINITY ROSS,                               )
                                            )
    Appellant-Defendant,            )
                                            )
      vs.                        )        No.  49A02-1402-CR-126
                                            )
STATE OF INDIANA,                           )
                                            )
    Appellee-Plaintiff.             )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Linda E. Brown, Judge
Cause No. 49F10-1301-CM-917

**November 14, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Trinity Ross appeals his convictions for Resisting Law Enforcement[1] as a class A misdemeanor and Public Intoxication[2] as a class B misdemeanor. Ross argues that the prosecutor engaged in misconduct that amounts to fundamental error, which placed him in grave peril and rendered a fair trial impossible. Finding no fundamental error, we affirm.

FACTS

On January 4, 2013, at approximately 1:30 in the morning, Indianapolis Metropolitan Police Officers Antwon Keyes and Brycen Garner saw an Audi A6 that was illegally parked. The officers ran the license plate and found that the car was registered to Ross. They then wrote a parking citation, placed it on the windshield, and called a tow truck to tow the Audi.

After the tow truck had arrived, the officers saw Ross approaching. Officer Keyes observed that he was stumbling and swaying. Ross walked up to the Audi, opened the door, and tried to get inside. He yelled at the tow truck driver, using loud cursing and incoherent and slurred speech. Officer Keyes told Ross to "stop," to which Ross replied that he was "talking to this mother fucker right here." Tr. p. 58-59, 60. Officer Keyes then asked Ross to provide identification, and Ross told the officer, "I don't have to give you my fucking ID." Id. at 61. Ross then retrieved his identification and thrust it at Officer Keyes's chest.

---

[1] Ind. Code § 35-44.1-3-1(a)(1).

[2] Ind. Code § 7.1-5-1-3.

The officers noticed that Ross displayed several signs of intoxication–glossy bloodshot eyes, swaying, the odor of alcohol on his breath and person, and a belligerent and lethargic demeanor. Officer Keyes decided to arrest Ross, telling him, "I have reason to believe you're intoxicated, so I'm going to place you under arrest. Turn around and put your hands behind your back." Tr. p. 65. Ross would not turn around and continued to yell. Officer Keyes repeated his instructions, but Ross did not turn around. Officer Keyes took Ross by the left arm, and Ross pulled away. Ross flailed and stiffened so that Officer Keyes could not handcuff him, and he clenched his right arm and kept it close to his chest to avoid Officer Garner's grasp. Ross broke loose from Officer Keyes's grasp, and Officer Keyes then placed Ross on the hood of his car. Ross continued yelling and resisting for about ten to fifteen more seconds and threatened Officer Keyes that "he had something that would burn through [his] vest." Tr. p. 72. After successfully handcuffing Ross, Officer Keyes gave the tow truck driver the keys to the Audi.

On January 4, 2013, the State charged Ross with resisting law enforcement and public intoxication. Ross's jury trial was held on December 30, 2013. At his trial, Ross testified that he had not been consuming alcohol on the night of the incident. He also testified that he had not been swaying or incoherent when he approached the tow truck, but had simply asked why his vehicle was being towed and explained to the tow truck driver that the Audi needed to be put in neutral before being towed. Ross also testified that he tried to give the tow truck driver his keys. He testified that he then noticed the officers running towards him, and that when they asked for his license, he responded by

3

inquiring why they needed his license if he was not driving. Ross testified that he did not resist arrest, because he did not have time to resist and did not know why he was being arrested.

Officer Keyes testified that Ross was indeed showing signs that indicated he was intoxicated and stated that Ross did not ask for a breath test. Officer Keyes testified that, because Ross was complaining and resisting, he asked Ross if he would like to speak to a supervisor. Ross called Sergeant Durham, who came to the scene and offered Ross a breath test, but Ross told him to "fuck off." Id. at 225-226.

At one point, the prosecutor asked Officer Keyes if the procedure that he followed when arresting the defendant was learned to the point that it was "automatic almost?" Id. at 220. And Officer Keyes responded that the police were trained that way. The prosecutor also asked Keyes what would happen if he made an arrest without probable cause, to which Keyes responded, "I could get – I could go to jail. I can be sued. I'd lose my job. My life would be over as far as the way my life is set up now. I wouldn't have any of the things that I have now." Id. at 222.

During his closing argument, the prosecutor referred to this testimony, stating:

When you're talking about credibility, I mean let's refresh upon it, hey. We heard Officer Keyes testify that if he locks somebody up without probable cause and he comes here on the stand, and he lies, he'll lose his job. The same applies to Officer Garner, they will lose their jobs, not for locking the guy up, not for making an arrest but because they lied. They lied when they arrested him. They lied when they wrote the probable cause affidavit. They lied when they talked to us. They lied on the witness stand. They lied to you. Do you think that's reasonable? Do you think Officer

4

Keyes and Officer Garner are going to put their entire livelihood on the line for this guy?

Supp. Amended Tr. p. 4.

The prosecutor continued:

They arrested him. They told him, "Listen, you put your hands behind your back. We're putting you under arrest for public intoxication. ["] What? Not once, twice. Do you really think the cops are going to put handcuffs on somebody without telling them why they're being arrested or why they're putting handcuffs on them? Do you think they want that liability on them? Do you think he wants to lose his job today? No way, he was trained at the Academy. This is (inaudible) from Day One [sic] (1) – before you do anything, you tell them why you're doing this, before you put the cuffs on them, you tell them why they are being arrested or detained.

Tr. p. 266.

The jury found Ross guilty as charged. The trial court sentenced Ross to 365 days for the resisting law enforcement conviction and to 178 days for the public intoxication conviction. The trial court suspended the entire sentence, with one day served. Ross now appeals.

DISCUSSION AND DECISION

I. Standard of Review

When reviewing a claim of prosecutorial misconduct, we will first determine whether the prosecutor engaged in misconduct. Carter v. State, 956 N.E.2d 167, 169 (Ind. Ct. App. 2011). If this Court finds that there has been misconduct, we then determine "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected." Id. The gravity

5

of the peril is not measured by the degree of impropriety of the conduct but, rather, by the probable persuasive effect of the misconduct on the jury's decision. Booher v. State, 773 N.E.2d 814, 817 (Ind. 2002). In order to preserve a claim of prosecutorial misconduct, the defendant must both object to the alleged misconduct and request an admonishment and move for a mistrial. Cowan v. State, 783 N.E.2d 1270, 1277 (Ind. Ct. App. 2003).

When a claim is not preserved by contemporaneous objection and a request for an admonishment and mistrial, the defendant must establish both the grounds for prosecutorial misconduct as well as the grounds for fundamental error to succeed on his claim. Booher, 773 N.E.2d at 818. Fundamental error is a "substantial, blatant violation of due process," so prejudicial to the rights of the defendant that it renders a fair trial impossible. Hall v. State, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010). To establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because alleged errors (a) "constitute clearly blatant violations of basic and elementary principles of due process" and (b) "present an undeniable and substantial potential for harm." Ryan v. State, 9 N.E.3d 663, 668 (Ind. 2014).

## II. Prosecutorial misconduct

Ross first argues that the prosecutor improperly elicited vouching testimony to bolster Officer Keyes's character. Specifically, Ross argues that the prosecutor should not have elicited testimony concerning whether or not there could be consequences for making an arrest without probable cause.

We clarify Ross's argument by pointing out that, in this instance, Ross is not arguing that the prosecutor engaged in misconduct by vouching for the witness. Rather, it appears that Ross is conflating vouching and bolstering, as his argument is that the prosecutor should not have elicited testimony that bolstered Officer Keyes's testimony. Ross maintains that since "Officer Keyes' credibility had not been attacked by Ross," it was improper for the prosecutor to elicit testimony that went to the officer's credibility. Appellant's Br. p. 7.

Ross is correct that Indiana Evidence Rule 608(a) provides that "evidence of truthful character is admissible only after the witness's character for truth fullness has been attacked. However, Ross is mistaken that Officer Keyes's testimony violates Rule 608(a).

At trial, Ross testified that he was not drunk, nor had he had anything to drink. Tr. p. 154. He testified that he had done nothing to cause the police to arrest him and that Officer Keyes had "physically abused" him. Id. at 166. He further testified that he had not resisted arrest. Id. When the state called Officer Keyes as a rebuttal witness, the following exchange occurred:

> State: Okay. I'm going to throw in a hypothetical for you. If someone who would be downtown this morning, same [time] of night would come up to you and you would say hey stop just like you did that night, and he would have spoken to you like the defendant had testified today, would you have arrested him that night?

> Defense: Objection. I believe that question calls for – I believe it's speculative.

7

State: It's a hypothetical, Judge. He is a police officer, and I'm asking about his experience and what he would do in that situation.

The Court: Overruled.

Officer Keyes: I don't think so. Not without anything else to[o], no I would not arrest him.

State: Why not.

Officer Keyes: Because that person wouldn't have had the signs of alcohol that I described Ross had. Well basically I wouldn't have probable cause to make an arrest at that point.

State: Okay. Now what would happen if you didn't make that arrest?

Officer Keyes: If I did make that arrest?

State: That's correct?

Officer Keyes: I could get – I could go to jail. I can be sued. I'd lose my job. I wouldn't be able to provide for my family. My life would be over as far as the way my life is set up now. I wouldn't have any of the things that I have now.

Tr. p. 221-22.

While Ross argues that the above exchange constitutes improper bolstering, we do not agree. Ross testified that Officer Keyes had no cause to arrest him, that he was not drunk, and that he did not resist arrest. The hypothetical introduced by the State and Officer Keyes's responses rebut Ross's testimony. While Officer Keyes's testimony regarding the consequences he might face if he arrested someone without probable case are almost certainly hyperbolic and an objection to that testimony might have been sustained, there was no objection. We find no fundamental error here.

8

Ross also contends that the prosecutor committed misconduct when he made statements he alleges vouched for the State's witnesses. A prosecutor may not state his or her personal opinion regarding the credibility of a witness during trial, as such statements amount to vouching for a witness. Thomas v. State, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012), trans. denied. However, "a prosecutor may comment as to witness credibility if the assertions are based on reasons arising from the evidence presented at trial." Id. It is the fact-finder's role to determine the truthfulness of witnesses. Rose v. State, 846 N.E.2d 363, 369 (Ind. Ct. App. 2006).

Ross contends that the prosecutor vouched for the officers' testimony when he stated that they could lose their jobs if they lied on the witness stand. During closing argument, the prosecutor stated:

> When you're talking about credibility, I mean let's refresh upon it, hey. We heard Officer Keyes testify that if he locks somebody up without probable cause and he comes here on the stand, and he lies, he'll lose his job. The same applies to Officer Garner, they will lose their jobs, not for locking the guy up, not for making an arrest but because they lied.

Supp. Amended Tr. p. 4. Ross argues that this statement constitutes improper vouching.

However, it appears that, in large part, the prosecutor's statements were based on the testimony given by Officer Keyes at trial. While an objection to the prosecutor's statements suggesting that the officers would lose their jobs if they lied on the witness stand might well have been sustained, no such objections were made. Although some of the statements above might have been unwise, Ross points us to no Indiana law that supports the contention that the above statements were misconduct. While we strongly

9

caution prosecutors to avoid this line of questioning in the future, we do not find fundamental error.

Ross also argues that the prosecutor engaged in misconduct when he argued that the officers' training and police procedure required the officers to tell Ross why he was being handcuffed. Ross maintains that the prosecutor argued facts not in evidence when he mentioned police training procedures and protocols.

A prosecutor may argue both law and facts and propound conclusions based on his or her analysis of the evidence, but the prosecutor must confine closing argument to comments based only upon the evidence presented. Gasper v. State, 833 N.E.2d 1036, 1042 (Ind. Ct. App. 2005). The State may properly discuss the evidence and all reasonable inferences which may be drawn therefrom so long as the prosecutor does not imply personal knowledge independent of the evidence. Barnes v. State, 435 N.E.2d 235, 241 (Ind. 1982).

During closing argument, the prosecutor argued that the officers would not have placed handcuffs on someone without explaining why that person was being arrested because the officer was "trained at the academy. This is (inaudible) from [d]ay [o]ne – before you do anything, you tell them why you're doing this, before you put the cuffs on them, you tell them why they're being arrested or being detained." Tr. p. 266. Ross argues that this statement assumes facts not in evidence regarding training and police protocol.

10

Officer Keyes testified at trial that he was trained to explain to individuals why they were being arrested and stated that officers were "taught to verbalize what we're doing," and stated that he went through a "six month training academy." Id. at 220, 39. The prosecutor's statements draw on this testimony, although perhaps hyperbolically. An objection during trial may possibly have been sustained, but we do not believe that this rises to the level of fundamental error.

Ross also argues that the prosecutor engaged in misconduct when he suggested that the officers saved the taxpayers money during closing argument, stating "Free tests? Taxpayers have to pay for those tests don't they; yeah, sure they do. They're not necessary, not needed, not required. They're not even suggested by IMPD." Id. at 261. Ross maintains that these comments were not based on the evidence.

When taken in context, it is clear that the prosecutor's statements regarding the tests were aimed at explaining to the jury that such tests were not required to convict Ross of public intoxication. The prosecutor continues on to inform the jury that signs of intoxication are sufficient and a breathalyzer test is not necessary for a conviction. However, there is no evidence in the record concerning who pays for such tests. The prosecutor should not have made comments about the matter, and an objection to statements concerning taxpayers who pay for such tests may well have been sustained, but, again, no such objection was made. We do not believe that the statement regarding the taxpayers greatly affected or harmed Ross's case and do not find fundamental error.

11

Ross also contends that the prosecutor misstated the material elements of resisting law enforcement during closing argument. Ross maintains that the prosecutor mislead the jury by suggesting that force was not a necessary element of resisting law enforcement.

To support a conviction for resisting law enforcement, the jury was required to find that Ross knowingly or intentionally resisted, obstructed, or interfered with law enforcement in the execution of their duties. I.C. § 35-44.1-3-1(a)(1). In Spangler v. State, our Supreme Court determined "that one 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law enforcement official's rightful exercise of his or her duties." 607 N.E.2d 720, 723 (Ind. 1993).

During closing argument, the prosecutor stated:

[The] State must prove a person knowingly or intentionally, forcibly resist[s], obstructs or interferes – so these are "[ors]" forcibly obstructs, forcibly resist or obstructs or interferes any of those with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties. . . . This, and as I mentioned forcibly resist, or obstructs, or interferes with a law enforcement officer – we have to prove any of those three (3) – we have all of them in this case. Personal touch on obstruct or interferes with a law enforcement officer. Their duty at that point was to tow that vehicle; and by him getting into that vehicle and yelling at the officers, or just the getting in the vehicle interfering with them towing that vehicle that's these two (2); and those (2) are there. And as for forcibly resist, you hear testimony about him pulling his arm up which Officer Garner had a hold of his right arm, jerking it away from Officer Garner while his left arm was snatching away from Officer Keyes – that's forcibly resist; that's strong powerful moves against these officers trying to get him to put his hands behind his back. So we have all (3) of these; we only need one (1) but we have all three (3) in this case.

12

Tr. p. 247-48. Ross argues that, by informing the jury that he interfered or obstructed by getting into the vehicle and yelling at the officer, the prosecutor misstated the law by implying that Ross did not need to "forcibly" resist.

Here, the prosecutor was explaining that Ross could be convicted based on his action when he forcibly resisted the officer's attempts to handcuff him or his forcible act of interfering with the officer's attempt to have his vehicle towed. Moreover, if there was any confusion that force was an element required to convict Ross of resisting law enforcement, it was allayed by the jury instructions. See Pettiford v. State, 506 N.E.2d 1088, 1089-90 (Ind. 1987) (final jury instructions can cure improprieties in a prosecutor's closing argument). Final jury instruction one provided the statutory definition of "resisting law enforcement," which instructed the jury that to "forcibly resist, instruct, or interfere" was an element of the resisting law enforcement. Appellant's App. p. 65. Final jury instruction five defined the term "forcibly":

> The term forcibly is a word descriptive of the type of resistance, obstruction, or interference prescribed by law. One "forcibly resists" law enforcement when strong, powerful, or violent means are used to evade a law enforcement official's rightful exercise of his or her duties. However, this force need not rise to the level of mayhem and [a] modest level of resistance may suffice. It is error as a matter of law to conclude that "forcibly resists" includes all actions that are not passive.

Id. at 69. It is made clear from the above jury instructions that force is a required element of resisting law enforcement.[3] We find no fundamental error.

---

[3] Ross argues that final jury instruction five was faulty, as it used the term "prescribed" by law rather than "proscribed" by law as used in Spangler. 607 N.E.2d at 723. Ross argues that this jury instruction compounded the prosecutor's alleged misconduct in misstating the elements of resisting law enforcement.

13

Additionally, we find that Ross's argument that the above instances of alleged prosecutorial misconduct taken together comprise fundamental error to be unpersuasive. To show fundamental error, Ross was required to show that, under the circumstances, the trial judge erred in not sua sponte raising the issue because alleged errors constitute clearly blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm. Ryan, 9 N.E.3d 663 at 668. He failed to do so.

The judgment of the trial court is affirmed.

KIRSCH, J., concurs, and ROBB, J., concurs in result without separate opinion.

---

We find that the jury instruction was still clear, and note that Ross has failed to raise a freestanding issue regarding any jury instruction and has therefore waived any argument concerning such instruction.