## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 24 2015, 9:26 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
| --- | --- |
| David W. Stone, IV<br>Anderson, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | George P. Sherman<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Donnis K. Wilkerson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 24, 2015<br><br>Court of Appeals Cause No.<br>48A05-1410-CR-481<br><br>Appeal from the Madison Superior Court<br>Cause No. 48C03-1311-FB-2164<br><br>The Honorable Thomas Newman, Jr., Judge |

**Barnes, Judge.**

# Case Summary

Donnis Wilkerson appeals his conviction for Class B Felony unlawful possession of a firearm by a serious violent felon. We affirm.

# Issues

The issues before us are:

> I.   whether there is sufficient evidence to support Wilkerson's conviction; and
>
> II.  whether the prosecutor committed prosecutorial misconduct and fundamental error in closing argument.

# Facts

The evidence most favorable to the conviction is that, on November 6, 2013, Lieutenant John Branson of the Anderson Police Department inspected a high crime business known as the VIP Lounge, which is a strip club. On that evening, around midnight, Lieutenant Branson observed a new Cadillac Escalade parked in an unusual spot against a fence in the back of the parking lot. Lieutenant Branson noticed that the vehicle was running with a person sitting in the driver's seat whose head began to "slink down further and further" as Lieutenant Branson got closer "[l]ike he was trying to avoid detection . . . ." Tr. p. 314.

Lieutenant Branson parked his marked police car and walked over to the driver side of the Escalade. Lieutenant Branson detected "a very strong odor of

marijuana coming from in the vehicle." *Id.* at 315. Lieutenant Branson then had the driver, Tremayne McPhaul, step out of the vehicle. While Lieutenant Branson was speaking to McPhaul, Roger Randolph, whose mother owned the Escalade, arrived on the scene requesting the keys to the vehicle. Lieutenant Branson called in additional officers for help before inspecting the vehicle.

[5] A few minutes later, Officer Michael Lee arrived on the scene and began inspecting the vehicle. Officer Lee had to use his flashlight to see into the vehicle. As Officer Lee was looking through the windows next to the third row seat, he spotted a gun in plain view lying in the middle of the seat. The weapon was a Glock forty-caliber hand pistol that was fully loaded. Wilkerson was discovered hiding on the floor of the vehicle "scrunched down between the seats" next to the third row seat. *Id.* at 323. Wilkerson was so close to the weapon that "his head and his hands would have been right by where the gun was." *Id.*

[6] An additional handgun was discovered by officers in the front seat of the vehicle. McPhaul admitted to placing the handgun in the passenger seat before he got out of the vehicle. McPhaul also admitted that marijuana found in the Escalade driver's door belonged to him. At trial, Randolph testified that he did not carry guns or place the guns or marijuana in the vehicle. No other individuals were in the vehicle that night other than McPhaul, Randolph, and Wilkerson.

On November 7, 2013, Wilkerson was charged with Count I, Class D felony receiving stolen property, and Count II, Class B felony unlawful possession of a firearm by a serious violent felon. The State filed a motion to dismiss Count I, which the trial court granted. Wilkerson stipulated that he qualified as a serious violent felon under Indiana law but challenged whether he possessed a firearm. He was subsequently found guilty of Count II. Wilkerson was sentenced to twenty years and now appeals.

## Analysis

### I. Sufficiency of Evidence

Wilkerson challenges the sufficiency of the evidence supporting his conviction for unlawful possession of a firearm by a serious violent felon. When reviewing the sufficiency of evidence, we examine only the probative evidence and reasonable inferences which support a guilty verdict. *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012). We do not assess witness credibility, nor do we reweigh evidence to determine the sufficiency to support a conviction. *Id.* Under our appellate system, those roles are not reserved for the appellate court, but exclusively for the finder of fact. *Id.* Our role is to consider only the evidence most favorable to the conviction and to affirm the conviction unless no reasonable fact-finder could conclude the elements of the crime were proven beyond a reasonable doubt. *Id.* Evidence is sufficient provided that an inference may reasonably be drawn from it to support the verdict. *Id.* Circumstantial evidence alone is sufficient for a conviction. *Naas v. State,* 993 N.E.2d 1151, 1152 (Ind. Ct. App. 2013). "Reversal is appropriate only when

reasonable persons would not be able to form inferences as to each material element of the offense." *Id.*

[9] Wilkerson argues that he did not possess the firearm. Constructive possession is at issue here. It is well-settled in Indiana that when constructive possession is asserted, the State must show the defendant had knowledge of the contraband. *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999). This knowledge may be inferred from the defendant's exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances showing the defendant had knowledge of the presence of the contraband. *Henderson*, 715 N.E.2d at 835-36. The various factors that can lead to constructive possession are:

> (1) incriminating statements by the defendant, (2) attempted flight or furtive gestures, (3) location of substances like drugs in settings that suggest manufacturing, (4) proximity of the contraband to the defendant, (5) location of the contraband within the defendant's plain view, and (6) the mingling of the contraband with other items owned by the defendant.

*Id.* at 836.

[10] Here, it was not possible for Wilkerson to flee the scene because he would have been instantly detected by Lieutenant Branson while trying to escape. It is evident by Wilkerson's actions that he was making an attempt to avoid being detected by officers. Wilkerson was buried down between the seats of a vehicle that had windows so darkly tinted that officers were unable to see inside without their flashlights. Not only was there no indication that someone else remained inside the vehicle, but Wilkerson made no attempt to make his

presence known. While Lieutenant Branson was speaking with McPhaul, Wilkerson did not open any doors to the vehicle or "volunteer to let [the officers] know he was there[.]" Tr. p. 322. Instead Wilkerson was physically removed from the car by Lieutenant Branson. We cannot agree with Wilkerson that his being hunched down between the seats had no logical connection with the gun that was found. Wilkerson argued he "wasn't hiding based on the fact that he had a weapon that day. He had a warrant." *Id.* at 362. Although we do not dispute there was a warrant for Wilkerson's arrest, to assert that he was hiding solely for this reason is pure speculation. It is reasonable to assume that the weapon found near his head was related to his attempt to avoid detection.

[11] Along with the obvious furtive nature of his actions to imply his knowledge of possessing the handgun, the weapon was not only closest in proximity to Wilkerson, but it was also in plain sight. It is undisputed that the gun was in plain sight "laying right in the middle of the seat." *Id.* at 290. Not only was the gun in plain sight, but the particular placement was on the third row of seats where Wilkerson was attempting to hide from police. "His head and his hands would have been right by where the gun was." *Id.* at 323. The gun was so close to Wilkerson's hands that officers testified within "a moments notice he could have grabbed it." *Id.* at 335. The gun was not close in proximity to anyone other than Wilkerson. Furthermore, McPhaul admitted possessing the marijuana and another handgun discovered in the vehicle and Randolph, whose mother owned the car, denied ever possessing guns or placing any in the

vehicle. The evidence most logically points to Wilkerson possessing the handgun.

[12] This case is distinguishable from *Henderson*, upon which Wilkerson relies. In *Henderson*, the driver of the car owned the guns, had permits for both guns, and notified the officer that guns were in the vehicle. The guns were also found in the middle of the car near the defendant and driver. Due to the fact that the driver owned the gun and had a gun permit and the location of the gun was equally close to both men, there was insufficient evidence to suggest the defendant exercised dominion. *Henderson*, 715 N.E.2d at 838. Here, by contrast, no one had a permit for the gun and the gun was mere inches away from Wilkerson and nowhere close to the driver. There is sufficient evidence to support Wilkerson's conviction.

## II. *Prosecutorial Misconduct*

[13] We now assess whether the prosecutor committed prosecutorial misconduct and fundamental error in closing argument. Wilkerson asserts that he was denied a fair trial by the prosecutor's improper closing argument. He further asserts that the prosecutor made improper statements unsupported by evidence such as the cost of Glock pistols, the deadly injuries associated with different types of ammunition, and asking the jurors to speculate why Wilkerson would have the pistol, in order to play on the emotional fears of jurors.

[14] The standard of review for a claim of improper closing argument was stated by our supreme court in *Ryan v. State,* 9 N.E.3d 663, 667 (Ind. 2014):

In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred, and if so, (2) "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected" otherwise.

The gravity of peril is determined by the probable persuasive effect of the misconduct on the jury's decision, not on the amount of impropriety of the conduct. *Carter v. State*, 956 N.E.2d 167, 169 (Ind. Ct. App. 2011).

[15] Wilkerson's trial counsel did not object to the prosecutor's closing argument. When presented on appeal, a claim of prosecutorial misconduct without a contemporaneous trial objection cannot succeed unless the defendant establishes both prosecutorial misconduct and additional grounds for fundamental error. *Id.* at 170. For prosecutorial misconduct to be fundamental error, it must make a fair trial impossible or amount to obvious blatant violations of basic and elementary principles of due process and present an undeniable and substantial potential for harm. *Id.* Misconduct occurs when a prosecutor requests the jury to convict a defendant for any reason other than his or her guilt. *Id.*

[16] Wilkerson points to several statements made by the prosecutor during closing argument. Specifically, the prosecutor said:

So two (2) different purposes, but you know what they both will kill you. Now what's he doing out there with this glock . . . . [H]ave you ever shopped for a weapon. Have you ever priced them? This is no Saturday night special. This will run you five hundred ($500.00) dollars any where you want to buy it.

* * * * *

> You don't have to worry about thing [sic] until the guns, until the money and drugs come together. When the money and the drugs come together carry a pistol, and we got two (2) of them.
>
> * * * * *
>
> Cause guys like McPhaul and this make it dangerous.

Tr. pp. 348-49, 350, 367.

[17] These statements were not based on any actual evidence and were used purely to inflame the jury. Although we agree that these statements were inappropriate, give their context, the overwhelming evidence of Wilkerson's guilt, and that the fact that they constituted a relatively brief part of the entire closing argument, we decline to find that these statements amounted to fundamental error. The prosecutor's additional statements regarding the doctrine of constructive possession and other arguments were entirely proper based on fair comments on the law and evidence presented.

## Conclusion

[18] Wilkerson has not established that there is insufficient evidence to support his conviction or that the prosecutor committed fundamental error during closing argument. We affirm.

[19] Affirmed.

Riley, J., and Bailey, J., concur.